STATE of Alaska, Appellant,

v.

NATIVE VILLAGE OF NUNAPITCHUK,
Association of Village Council Presi-
dents, Alaska Center for The Environ-
ment, Northern Alaska Environmental
Center, Southeast Alaska Conservation
Council, and the Republican Moderate
Party, Inc., Appellees.

Frank Murkowski, in his official capacity
as Governor of the State of Alaska,
Appellant,

v.

Alaska AFL–CIO; Alaska Public Employ-
ees Association/AFT; IBEW Local 1547;
Public Employees Local 71; Operating
Engineers Local 302; Alaska State Em-
ployees Association/AFSCME Local 52;
Alaska Laborers Local 341; and Team-
sters Local 959, Appellees.

Nos. S–11525, S–11745.

Supreme Court of Alaska.

April 20, 2007.

Craig J. Tillery, Christopher M. Kennedy, Assistant Attorneys General, Anchorage, Scott J. Nordstrand, Acting Attorney General, David W. Márquez, Attorney General, Juneau, for Appellants State of Alaska and Frank Murkowski.

Eric D. Johnson, Association of Village Council Presidents, Bethel, for Appellees Native Village of Nunapitchuk and Association of Village Council Presidents.

Thomas S. Waldo, Layla A. Hughes, Earthjustice, Juneau, for Appellees Alaska Cen-

ter for the Environment, Northern Alaska Environmental Center, and Southeast Alaska Conservation Council.

Nancy S. Wainwright, Law Office of Nancy S. Wainwright, Anchorage, for Appellee The Republican Moderate Party, Inc.

Linda M. O'Bannon, Paul L. Dillon, Dillon & Findley, P.C., Anchorage, for Appellees Alaska AFL–CIO, Alaska Public Employees Association/AFT, IBEW Local 1547, Public Employees Local 71, Operating Engineers Local 302, Alaska State Employees Associa-

tion/AFSCME Local 52, Alaska Laborers Local 341, and Teamsters Local 959.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

■ Challenged in these cases is an act of the 2003 Legislature (HB 145)[1] that modifies

---

1. Ch. 86, SLA 2003. Since the parties refer to this act as HB 145, we will do so as well. The act provides:

> AN ACT prohibiting discrimination in the awarding of attorney fees and costs in civil actions or appeals to or against, or in the posting of bonds or other security by, public interest litigants; and relating to awards of attorney fees and costs in cases involving enforcement of constitutional rights.
>
> * Section 1. The uncodified law of the State of Alaska is amended by adding a new section to read:
> PURPOSE. (a) The judicially created doctrine respecting the award of attorney fees and costs for or against public interest litigants has created an unbalanced set of incentives for parties litigating issues that fall under the public interest litigant exception. This imbalance has led to increased litigation, arguments made with little merit, difficulties in compromising claims, and significant costs to the state and private citizens. More importantly, application of the public interest litigant exception has resulted in unequal access to the courts and unequal positions in litigation.
>
> (b) The purpose of sec. 2 of this Act to provide for a more equal footing for parties in civil actions and appeals by abrogating the special status given to public interest litigants with respect to the award of attorney fees and costs. It is the intent of the legislature to expressly overrule the decisions of the Alaska Supreme Court in *Dansereau v. Ulmer*, 955 P.2d 916 (Alaska 1998); *Southeast Alaska Conservation Council, Inc. v. State*, 665 P.2d 544 (Alaska 1983); *Thomas v. Bailey*, 611 P.2d 536 (Alaska 1980); *Anchorage v. McCabe*, 568 P.2d 986 (Alaska 1977); *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974), and their progeny, insofar as they relate to the award of attorney fees and costs to or against public interest litigants in future civil actions and appeals.
>
> (c) This Act does not preclude the enactment of specific statutes authorizing awards of costs or fees in particular situations, such as in AS 45.50.537.
>
> * Sec. 2. AS 09.60.010 is amended by adding new subsections to read:

> (b) Except as otherwise provided by statute, a court in this state may not discriminate in the award of attorney fees and costs to or against a party in a civil action or appeal based on the nature of the policy or interest advocated by the party, the number of persons affected by the outcome of the case, whether a governmental entity could be expected to bring or participate in the case, the extent of the party's economic incentive to bring the case, or any combination of these factors.
>
> (c) In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court
> (1) shall award, subject to (d) and (e) of this section, full reasonable attorney fees and costs to a claimant, who, as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or on appeal, has prevailed in asserting the right;
> (2) may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or appeal did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.
>
> (d) In calculating an award of attorney fees and costs under (c)(1) of this section,
> (1) the court shall include in the award only that portion of the services of claimant's attorney fees and associated costs that were devoted to claims concerning rights under the United States Constitution or the Constitution of the State of Alaska upon which the claimant ultimately prevailed; and
> (2) the court shall make an award only if the claimant did not have sufficient economic incentive to bring the suit, regardless of the constitutional claims involved.
>
> (e) The court, in its discretion, may abate, in full or in part, an award of attorney fees and costs otherwise payable under (c) and (d) of this section if the court finds, based upon sworn affidavits or testimony, that the full im-

the public interest litigant exception[2] to Alaska Civil Rule 82.[3] Although the legislature has the authority to change the civil rules, it may only do so by a two-thirds vote of the members of each house. HB 145 was not passed by these margins. The superior court in each case held that HB 145 was invalid because it changes Rule 82 without the required super-majority vote.

We conclude that the act is valid because it does not change either the text or a judicial interpretation of the court rule. Rather, it modifies a policy-based nontextual exception that is an appropriate subject for legislative action. We also narrowly construe HB 145, concluding that it does not preclude consideration of any factors under subsection (b)(3) of Rule 82 that may justify varying attorney's fee awards calculated under subsections (b)(1) and (2).

position of the award would inflict a substantial and undue hardship upon the party ordered to pay the fees and costs or, if the party is a public entity, upon the taxpaying constituents of the public entity.

\* Sec. 3. AS 09.68.040 is amended by adding a new subsection to read:

(c) A court in this state may not excuse a litigant requesting the entry of a stay or other interlocutory relief from posting a bond or other security to protect the persons who will be adversely affected if the excuse is based on the nature of the policy or interest advocated by the party, the number of persons affected by the outcome of the case, whether a governmental entity could be expected to bring or participate in the case, the extent of the party's economic incentive to bring the case, or any combination of these factors.

\* Sec. 4. The uncodified law of the State of Alaska is amended by adding a new section to read:

APPLICABILITY. This Act applies to all civil actions and appeals filed on or after the effective date of this Act.

2. The public interest litigant exception operates both affirmatively and protectively: affirmatively, in that when a public interest litigant prevails it is entitled to an award of full attorney's fees, *Anchorage v. McCabe*, 568 P.2d 986 (Alaska 1977), and protectively, in that when a public interest litigant is on the losing side of litigation no attorney's fees may be assessed against it. *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974).

3. Rule 82 provides that partial attorney's fees shall be awarded to prevailing parties as a matter of course. Awards are a percentage of actual fees or, if there is a money judgment, a percentage of the judgment, subject to variation at the discretion of the trial court based on consideration of specified factors. Rule 82 provides in relevant part:

(a) Allowance to Prevailing Party. Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.

(b) Amount of Award.

(1) The court shall adhere to the following schedule in fixing the award of attorney's fees to a party recovering a money judgment in a case:

\* \* \*

(2) In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred. The actual fees shall include fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal or law clerk.

(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:

(A) the complexity of the litigation;

(B) the length of trial;

(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;

(D) the reasonableness of the number of attorneys used;

(E) the attorneys' efforts to minimize fees;

(F) the reasonableness of the claims and defenses pursued by each side;

(G) vexatious or bad faith conduct;

(H) the relationship between the amount of work performed and the significance of the matters at stake;

(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and

(K) other equitable factors deemed relevant. If the court varies an award, the court shall explain the reasons for the variation.

## II. FACTS AND PROCEEDINGS

### State v. Native Village of Nunapitchuk, No. S–11525

The Native Village of Nunapitchuk, Association of Alaska Village Council Presidents, Alaska Center for the Environment, Northern Alaska Environmental Center, Southeast Alaska Conservation Council, and the Republican Moderate Party (collectively "Nunapitchuk") filed a complaint in the superior court seeking a declaration that HB 145 is invalid. Nunapitchuk claimed that the act changes a rule of practice and procedure of this court without having been passed by a two-thirds vote of each house as required by article IV, section 15 of the Alaska Constitution and contravenes the right of access to the courts in violation of the due process and equal protection clauses of the Alaska Constitution. All parties moved for summary judgment. Superior Court Judge Patricia Collins, in a thorough opinion, concluded that summary judgment should be granted in favor of Nunapitchuk.

The court entered final judgment in favor of Nunapitchuk, declaring that HB 145 "was not validly enacted and is ineffective, because the bill purports to change rules governing practice and procedure adopted by the Alaska Supreme Court without notice of rule change and without having received the requisite two-thirds vote of the members elected to both houses of the legislature." The court also declared that the act is invalid "because the bill's provisions precluding the courts from considering equitable factors in the award of attorney's fees impermissibly impede access to the courts in violation of the due process and equal protection clauses of the Alaska Constitution." Noting that it was not possible to sever the invalid portions of HB 145 from those that are valid because "there is no indication that the legislature would have intended the remaining provisions to stand on their own," the court declared HB 145 to be invalid in its entirety.

Subsequently, the court awarded the plaintiffs—which each had separate counsel—a total sum of just under $150,000 as actual reasonable attorney's fees under the public interest litigant exception.

### Murkowski v. Alaska AFL–CIO, No. S–11745

Alaska AFL–CIO, Alaska Public Employees Association/AFT, IBEW Local 1547, Public Employees Local 71, Operating Engineers Local 302, Alaska State Employees Association/AFSCME Local 52, Alaska Laborers Local 341, and Teamsters Local 959 (collectively "the Unions") sued Governor Frank Murkowski and James S. Spalding, alleging that Spalding lacked the "background in labor" that AS 23.05.360 requires for the position with the Alaska Labor Relations Agency that the governor had appointed Spalding to fill. The superior court granted a temporary restraining order at the behest of the Unions, but before the preliminary injunction hearing Spalding resigned from his appointed position. The case was then dismissed by stipulation with the question of court-awarded attorney's fees reserved.

The Unions moved for full reasonable attorney's fees under the public interest litigant exception. They contended that the exception applied despite HB 145 because the act was invalid for the reasons stated in Judge Collins's opinion in *Nunapitchuk.* Over opposition, Superior Court Judge Larry R. Weeks ruled that the Unions were entitled to full reasonable fees of just over $38,000. Judge Weeks adopted Judge Collins's opinion, adding that awarding attorney's fees is procedural because "the allocation of attorney fees is not so much a right of itself but tends to be how rights are enforced."

The State [4] appeals the declaratory judgment in *Nunapitchuk* and the award of attorney's fees to the Unions in *Alaska AFL–CIO.*

## III. DISCUSSION

### A. Background of Civil Rule 82, the Public Interest Litigant Exception, and House Bill 145.

Judge Collins described Rule 82, the public interest litigant exception, and HB 145.

---

4.  We refer to the appellants in both cases as "the State."

Concerning Rule 82 and the public interest litigant exception, she wrote: [5]

Alaska is the only state with a general "loser pays" rule for attorney's fees in most civil litigation. Alaska courts generally award partial attorney's fees to the prevailing party in a civil case or appeal pursuant to Alaska Rule of Civil Procedure 82 or Alaska Appellate Rule 508. However, Civil Rule 82 has, since its adoption, allowed the trial court discretion to vary a fee award and Appellate Rule 508 provides full discretionary powers to determine whether an award of fees should be ordered on appeal.

The Alaska Supreme Court has long recognized that strict application of the "loser pays" provisions of Civil Rule 82 could unfairly prejudice a litigant's access to the courts. In *Malvo v. J.C. Penney Co.*, [512 P.2d 575 (Alaska 1973),] the court concluded it was "manifestly unreasonable" to establish a policy under Civil Rule 82 that would award full fees to a prevailing party where the non-prevailing party litigated in good faith. The court noted that such a cost requirement could offend due process by limiting access to the court and, thus, the opportunity to be heard.

In *Gilbert v. State*, [526 P.2d 1131 (Alaska 1974),] a residency requirement for senate candidates was challenged as unconstitutional. Although holding that the residency requirement was constitutional, the court stated: "[A]s a matter of sound policy, we hold that it is an abuse of discretion [under Civil Rule 82] to award attorneys' fees against a losing party who has in good faith raised a question of genuine public interest before the courts."

In *Anchorage v. McCabe*, [568 P.2d 986 (Alaska 1977),] homeowners challenged a zoning ordinance and won. The trial court awarded full attorney's fees to the homeowners pursuant to its discretionary power under Civil Rule 82. The supreme court affirmed, concluding that the action constituted public interest litigation because of the presence of three factors: "(1) the effectuation of strong public policies; (2) the fact that numerous people received

benefits from plaintiffs' litigation success; and (3) the fact that only a private party could have been expected to bring this action." The court found that the homeowners were effectively acting as private attorneys general, raising issues of public interest, and should not be discouraged in doing so by the financial burdens of attorney's fees and costs.

The *McCabe* court recognized that the United States Supreme Court had recently "resisted" the opportunity to expand the private attorney general theory underlying attorney's fees awards to public litigants in *Alyeska Pipeline Service v. Wilderness Soc.*, 421 U.S. 240[, 95 S.Ct. 1612, 44 L.Ed.2d 141] (1975). The court distinguished the conclusion in *Alyeska* that attorney's fees awards should be by legislation, rather than court rule or decision, because, unlike the federal system, Alaska Civil Rule 82 specifically provides for the award of attorney's fees to the prevailing party in civil cases.

In *Kenai Lumber Co. v. LeResche*, [646 P.2d 215 (Alaska 1982),] the supreme court added a fourth factor to the determination of whether an action is public interest litigation: whether a litigant claiming public interest litigant status would have a sufficient economic incentive to bring the lawsuit even if it involved only narrow issues lacking general importance.

In *Dansereau v. Ulmer*, [955 P.2d 916 (Alaska 1998),] a group of voters challenged the legality of the 1994 gubernatorial election in which Tony Knowles was elected governor, alleging violation of election laws and other misconduct. The voters prevailed on one argument but did not prevail on the others and the election was upheld. On appeal, the supreme court held that the trial court abused its discretion under Civil Rule 82 in failing to award full reasonable attorney's fees to the voters, as public interest litigants.

In sum, the Alaska Supreme Court has interpreted the discretionary power granted in Civil Rule 82 to deviate from the award schedule set forth in the rule in fairly precise terms. So long as a public

**5.** The superior court opinion has been edited to    conform with the formal standards of this court.

interest litigant meets the four criteria established by the supreme court, (1) attorney's fees may not be assessed against a losing public interest litigant, (2) a winning public interest litigant is entitled to full reasonable attorney's fees, and (3) a public interest litigant who prevails on some but not all issues is also generally entitled to full, reasonable attorney's fees. The supreme court has further stated that the same considerations as noted above apply to awards of costs and attorney's fees on appeal. [*Thomas v. Bailey*, 611 P.2d 536, 539 (Alaska 1980).]

(Footnotes omitted or added to text.)

Earlier in her opinion, Judge Collins described HB 145:

House Bill 145, codified as amendments to AS 09.60.010 and AS 09.68.040, overrules Alaska Supreme Court decisions as they relate to public interest litigants. Section 2 creates a limited constitutional claimant public interest litigant exception to Alaska Rule of Civil Procedure 82. Section 2 also prohibits a court from considering the public interest nature of the claim in deciding cost and fee awards, except for those constitutional claims provided for in the bill. Section 3 modifies AS 09.68.040 such that public interest litigants may not be excused from bond or security requirements otherwise required for a stay or other interlocutory relief.

## B. Arguments on Appeal.

The State argues that HB 145 did not require a super-majority vote of the legislature for two reasons:

(1) The public interest litigant exception is not a court rule; rather it is a substantive rule of decisional law;

(2) Assuming that the act changes Rule 82, Rule 82 is substantive rather than a rule of practice and procedure and thus may be changed by a simple majority vote.

As to the superior court's conclusion in *Nunapitchuk* that the act is unconstitutional because it unduly interferes with access to

the courts, the State argues that a facial judgment was inappropriate and that the court should have awaited a specific case to determine whether, as applied, access was effectively denied. In support of this position and in response to the court's conclusion that the act will chill future public interest litigation, the State argues that the act does not prohibit consideration of any circumstance relevant to a determination of whether a Rule 82 fee should be reduced or not assessed at all.

Nunapitchuk and the Unions take issue with each of the State's arguments.

## C. Summary of Our Decision

We conclude that Rule 82 is a rule of practice and procedure authorized under article IV, section 15, of the Alaska Constitution. But we also conclude that the public interest litigant exception is a rule of substantive law that can be changed by the legislature without a two-thirds vote. We conclude that HB 145 does not change Rule 82, but that courts when considering the "other equitable factors" ground for varying awards should be cognizant of the need to avoid using this ground as a means to encourage public interest litigation in violation of the policy underlying HB 145. We agree with the State that a declaratory judgment striking down HB 145 on the ground that it necessarily impedes access to the courts is inappropriate, and that any such determination must be made on a case-by-case basis.

## D. Rule 82 Is a Rule of Practice and Procedure.

█ Article IV, section 15 of the Alaska Constitution authorizes this court to promulgate "rules governing practice and procedure in civil and criminal cases in all courts." The legislature may change these rules, but only by a two-thirds vote of each house.[6] The constitution also commits the enactment of all substantive law—that is all law *except*

---

6. And only if the particular enactment states that its purpose is to change a court rule. *Leege v.*

*Martin,* 379 P.2d 447, 451 (Alaska 1963).

rules of practice and procedure [7]—to the legislature, acting by an affirmative vote of the majority of each house.[8] Thus, the constitution necessarily requires distinguishing between procedural and substantive law. The former is the province of the court, in the first instance, and the latter is the province of the legislature. But the distinction between procedural and substantive law, at the margins, is by no means clear.

An early effort to distinguish between substance and procedure was made by this court in *Ware v. City of Anchorage.*[9] There the question was whether a statute, AS 09.60.060, requiring nonresident plaintiffs to post security for costs and fees and staying their actions until security was posted, was substantive or procedural. We stated that as a general rule, "substantive law creates, defines and regulates rights, while procedural law prescribes the method of enforcing the rights."[10] We suggested that the taxation of costs and attorney's fees was generally procedural, but held that the statute in question went beyond merely the computation and assessment of fees and costs and created a new substantive right:

> While it has been held in states where rule making power is vested in the supreme court that the definition and taxation of court costs and attorney's fees are procedural, we are nevertheless of the opinion that the statute under consideration is substantive law. [11]
>
> . . . .
>
> . . . [T]he act creates a new right in the resident defendant and a new liability in the nonresident plaintiff which are separate and apart from, and go beyond, the procedure of computing and assessing costs and attorney's fees. These rights

are substantial, since it is possible for costs and attorney's fees allowable under the Alaska Rules of Civil Procedure to amount to many thousands of dollars. [12]

In *Channel Flying, Inc. v. Bernhardt*[13] this court employed the *Ware* definition. At issue was AS 22.20.022, which affords parties the right to peremptorily challenge a judge.[14] The statute was challenged as procedural and therefore in violation of the rule-making power of this court. We concluded that the statute was substantive, stating:

> This statute does not merely regulate procedure. With or without it the particular action in court takes the same course. The statute rather creates and defines a right—the right to have a fair trial before an unbiased and impartial judge. This is something more than merely prescribing a method of enforcing a right. [15]

■ More than a decade after *Ware* and *Channel Flying,* this court in *Nolan v. Sea Airmotive, Inc.,* revisited the substance and procedure dichotomy.[16] There the question was whether a statute that prescribed when a wage and hour class action would be deemed to be commenced was substantive or procedural.[17] We held that the statute was procedural and invalid because it conflicted with Alaska Civil Rule 23 governing class actions.[18] We began by describing three requirements that had to be met in order to invalidate a statute as procedural. Courts must conclude

> first, that the statute indeed conflicts with a rule promulgated by the court, *Matanuska Maid, Inc. v. State,* 620 P.2d 182, 188 (Alaska 1980), second, that the main subject of the statute is not substantive with

---

**7.** Excepted as well are rules governing the administration of all courts. Under article IV, section 15 of the constitution, the supreme court also has the responsibility to promulgate rules concerning the administration of the courts.

**8.** Alaska Const. art. II, § 14.

**9.** 439 P.2d 793 (Alaska 1968).

**10.** *Id.* at 794.

**11.** *Id.* (footnotes omitted).

**12.** *Id.* at 795.

**13.** 451 P.2d 570 (Alaska 1969).

**14.** *Id.* at 575.

**15.** *Id.* at 576 (footnotes omitted).

**16.** 627 P.2d 1035, 1042 (Alaska 1981).

**17.** *Id.* at 1042.

**18.** *Id.* at 1047.

only an incidental effect on procedure, *Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541, 547 (Alaska 1975), *Channel Flying, Inc. v. Bernhardt*, 451 P.2d 570, 576 (Alaska 1969), and finally, that the legislature has not changed the rule with the stated intention of doing so, *Leege v. Martin*, 379 P.2d 447, 451 (Alaska 1963). Civil Rule 93 reflects this scheme by providing:

> These rules are promulgated pursuant to constitutional authority granting rule making power to the supreme court, and to the extent that they are inconsistent with any procedural provisions of any statute not enacted for the specific purpose of changing a rule, shall supersede such statute to the extent of such inconsistency. [19]

We then turned to the definitions of the terms "procedural" and "substantive." After noting the *Ware* definition we stated:

> But while this distinction claims venerable origins, it has been recognized that the definition falls far short of drawing an unequivocal line. *See* Joiner & Miller, [*Rules of Practice and Procedure: A Study of Judicial Rule Making*, 55 Mich. L.Rev. 623, 635 (1957)]. Decisions on the method of enforcing a right often affect substantive rights, and the regulation of substantive rights may have an impact upon judicial procedure.
>
> As a result, *an important part of the inquiry should be an examination of whether the rule or statute under scrutiny is more closely related to the concerns that led to the establishment of judicial rule making power, or to matters of public policy properly within the sphere of elected representatives.* In *Leege v. Martin*, 379 P.2d 447, 450 (Alaska 1963), we noted the reasons for "placing in the judicial branch of government, rather than in the legislature, the initial and primary responsibility for making rules of court practice and procedure." We stated:

> The administration of justice is the day to day business of the *courts; they are better equipped than a legislature to know the most effective and efficient methods of conducting that business.* The field of judicial procedure should not remain static; there is need for regular review and revision of basic rules "to keep them abreast of new trends and applicable generally to the substantive law as it develops." The legislative process does not readily adapt itself to that end. Unfamiliar with court practice, legislatures are not in a position to recognize the need for procedural revision when it arises. When the need is called to their attention, they lack the experience and expertness necessary to solve it. As a result, necessary changes come slowly, and judicial procedure becomes undesirably rigid. *Courts,* however, *are primarily concerned with providing the most effective and efficient system for carrying out the administration of justice.* This concern, and a close familiarity with rules of practice through daily use, puts the courts in a position to recognize immediately the need for procedural revision and to act quickly in bringing it about. Consequently, the courts are better equipped than the legislature to review and revise procedural rules.
>
> *Id.* [20]

■ Using the *Ware* test, when we ask whether Rule 82 "creates, defines and regulates rights" or is a "method of enforcing the rights," [21] no clear answer emerges. On the one hand, the rule creates a right to partial attorney's fees, and the attorney's fees awarded under the rule, as *Ware* recognized, can be quite substantial in terms of value. On the other hand, the rule is part of a method for enforcing rights external to court proceedings that are vindicated by the judgment in favor of the prevailing party. If fees were not allowed, the prevailing party would suffer a loss in spite of its victory. A Rule 82 award of partial fees mitigates this effect.

---

19. *Id.* at 1040.

20. *Id.* at 1042–43 (emphasis added & footnotes omitted).

21. *Ware,* 439 P.2d at 794.

The latter, it seems to us, is the better view. We believe that the allocation of attorney's fees under the rule is, to use Judge Weeks's language, "not so much a right of itself but tends to be how rights are enforced."

Similarly, reference to *Nolan's* addition to the *Ware* test, requiring courts to focus on whether a statute or rule is primarily concerned with public policy or an effective and efficient system for the administration of justice, does not yield an unarguably clear answer. On one hand, awarding fees as a matter of course to the prevailing party is unique in the American system of justice.[22] This uniqueness could support an argument that the rule is not intrinsic to the effective and efficient conduct of judicial business, but is a matter of policy extrinsic to that subject. On the other hand, Rule 82's primary purpose is to partially compensate a prevailing party for attorney's fees incurred in enforcing or defending the party's rights, regardless of the nature of those rights.[23] Without the rule, the rights of the prevailing party would be less completely vindicated because of the uncompensated expense of litigation. In light of this purpose, the rule may be viewed as intrinsic to an effective system for the administration of justice. Again, we believe that the latter view is the better one. It correctly reflects this court's purpose in promulgating, and continuing in effect, Rule 82.[24]

The State's main argument that Rule 82 is not procedural is based on AS 09.60.010(a) and its antecedents.[25] Alaska Statute 09.60.010 was originally enacted by the state legislature as part of the Code of Civil Procedure in 1962.[26] In its original form this section provided: "Except as otherwise provided by statute, the Supreme Court of Alaska shall determine by rule or order what costs, if any, including attorney fees, shall be allowed the prevailing party in any case."[27] Before Alaska was organized as a territory, Congress authorized the courts of the District of Alaska to award attorney's fees to prevailing parties as costs.[28] This practice was continued during the territorial period and AS 09.60.010 replaced provisions of the territorial Code of Civil Procedure that granted authority to the territorial courts to award attorney's fees to prevailing parties as

---

**22.** Alaska Judicial Council, *Alaska's English Rule: Attorney's Fee Shifting in Civil Cases* 7–28 (1995).

**23.** *Preferred Gen. Agency of Alaska, Inc. v. Raffetto*, 391 P.2d 951, 954 (Alaska 1964).

**24.** This court, acting in conjunction with the standing committee on civil rules, has responded promptly and often to the need to revise Rule 82. Thirteen revisions have been made since the rule's original promulgation in 1959. These revisions demonstrate the merit of *Nolan's* statement concerning the court's ability to recognize and respond to the need for rule revisions.

**25.** AS 09.60.010(a) currently provides:

The supreme court shall determine by rule or order the costs, if any, that may be allowed a prevailing party in a civil action. Unless specifically authorized by statute or by agreement between the parties, attorney fees may not be awarded to a party in a civil action for personal injury, death, or property damage related to or arising out of fault, as defined in AS 09.17.900, unless the civil action is contested without trial, or fully contested as determined by the court.

**26.** Ch. 101, § 5.14, SLA 1962.

**27.** Former AS 09.60.010 (1962).

**28.** The act provided:

The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties; but there may be allowed to the prevailing party in the judgment certain sums by way of indemnity for his attorney fees in maintaining the action or defense thereto, which allowances are termed costs.

Act of Congress of June 6, 1900, ch. 786, 31 Stat. 321, 415–418 (compiled in the Carter Code as a part of the Code of Civil Procedure, § 509, part IV, Carter's Annotated Alaska Code (CAAC) (1900)). This provision was taken verbatim from the Code of Civil Procedure and Other General Statutes of Oregon Ch. VI, Title V, sec. 538 (1863). The Oregon statute was rooted in the Field Codes, originally developed for New York but widely adopted elsewhere. It seems that Alaska law developed differently from that of Oregon and the other Field Code states because the act passed by Congress for the District of Alaska left the amount of the award of attorney's fees to the courts, whereas in Field Code states the legislatures set allowable fees, usually in small amounts. *See Alaska's English Rule, supra* note 22 at 11–13, 30–33, especially notes 145 and 149.

costs in an amount to be fixed by the court.[29]

The State argues that this court derived its authority to promulgate Rule 82 from AS 09.60.010 rather than from article IV, section 15 of the constitution. Two cases lend some support to this argument. In *Crisp v. Kenai Peninsula Borough School District* this court stated that "Rule 82 was established by this court pursuant to a legislative delegation of authority found in AS 09.60.010."[30] In *Stepanov v. Gavrilovich,* decided a year later, we observed that "[t]he authority to make such [attorney's fees] awards is derived from AS 09.60.010."[31] But cases decided closer to the onset of statehood indicate that our court rules concerning attorney's fees are based on this court's constitutional rule-making authority. Cases decided subsequent to *Crisp* and *Stepanov* take the same view.

*McDonough v. Lee,* decided in 1966 by a court in which two of the three justices had served on the court in 1959 when Rule 82 was promulgated, contains the most thorough discussion of the origin and authority of Rule 82.[32] The issue in *McDonough* was whether an attorney's fee award of approximately $32,000 on a verdict of approximately $312,000 was an abuse of discretion.[33] Although the amount of the award of fees was arrived at in accordance with the Rule 82 schedule for calculating fees, the appellant argued, among other things, that the award was an abuse of discretion because only $32,000 of the principal amount of the judgment, excluding attorney's fees, was covered by insurance.[34] The standard liability insurance policy in effect at the time of *McDonough* required insurance companies to pay all costs taxed against the insured.[35] Since Rule 82 attorney's fees were considered costs, the appellant's insurance company was facing a liability for attorney's fees that was approximately the same as its liability under the primary limits of the policy. The claim in *McDonough* was rejected and the award of fees was upheld.[36] In reaching this conclusion, the *McDonough* court reviewed the long history of awarding attorney's fees in Alaska, noting that until the onset of statehood courts were permitted to award reasonable fees to the prevailing party in each case, with the amount of the award left to the discretion of the trial court:

> The common law does not permit the recovery of attorney's fees, as costs, from the opposing party.[1] Ordinarily such an item of litigation expense was disallowed in the absence of a statute or rule of court. Statutory authorization for the allowance of attorney's fees in this jurisdiction is of relatively ancient origin.[2] Our earliest statute on this subject provided:

> > The measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties; *but there may be allowed to the prevailing party in the judgment certain sums by way of indemnity for his attorney fees in maintaining the action or defense thereto, which allowances are termed costs.*[3] (Emphasis added.)

> In *Forno v. Coyle*[4] the Ninth Circuit had occasion to construe a companion statute[5] to the attorney's fee statute just quoted. In its opinion the court said:

> > By the act of 1923, amending the act of Congress, the Territorial Legislature of Alaska gave the courts the express

---

29. The territorial statutes in effect immediately prior to statehood were § 55–11–51 Alaska Complied Laws Annotated (ACLA) (1949) ("there may be allowed to the prevailing party in the judgment certain sums by way of indemnity for his attorney fees in maintaining the action or defense thereto, which allowances are termed costs") and § 55–11–55 ACLA (1949) ("A party entitled to costs shall also be allowed ... a reasonable attorneys' fee to be fixed by the court.").

30. 587 P.2d 1168, 1169 n. 5 (Alaska 1978), *overruled on other grounds by Rosen v. State Bd. of Pub. Accountancy,* 689 P.2d 478, 482 (Alaska 1984).

31. 594 P.2d 30, 37 (1979).

32. 420 P.2d 459 (Alaska 1966).

33. *Id.* at 460.

34. *Id.* at 464.

35. *See Liberty Nat'l Ins. Co. v. Eberhart,* 398 P.2d 997, 999 (Alaska 1965) (discussed in *McDonough,* 420 P.2d at 463 & 465 n. 22).

36. *McDonough,* 420 P.2d at 465.

power to impose "reasonable" attorney's fees, and that what is "reasonable" depends on the circumstances of each individual case.

---

1. *LeFave v. Dimond*, 46 Cal.2d 868, 299 P.2d 858, 859, 60 A.L.R.2d 939 (1956); 20 Am.Jur.2d Costs § 72, at 58.

2. Act of Congress of June 6, 1900, 31 Stat. 415–418.

3. Statute cited note 2 *supra.* This statute was subsequently codified in Carter Code, Part IV, § 509 (1900); § 1341 CLA (1913); § 4061 CLA (1933); and § 55–11–51 ACLA (1949); *see also* SLA 1923, ch. 38, § 1 which amended § 1345 CLA (1913) to read in part:

> A party entitled to costs shall also be allowed ... a reasonable attorneys' fee to be fixed by the court.

This section of the code of civil procedure was subsequently codified as §§ 4065, 4066 CLA (1933) and § 55–11–55 ACLA (1949), which together with § 55–11–51 ACLA (1949) is now the subject matter of Civ. R. 54(d) and Civ. R. 82.

4. 75 F.2d 692, 696 (9th Cir.1935).

5. *See* § 1345 CLA (1913) as amended SLA 1923, Ch. 38, § 1; subsequently § 55–11–55. [37]

After this review, the *McDonough* court stated that with the advent of statehood and the Alaska Court System, awards of attorney's fees as costs were governed by the Rules of Civil Procedure promulgated by the supreme court *"pursuant to its constitutional rule-making authority."* [38]

> Since the attainment of statehood and the activation of the Alaska Court System, the award of attorney's fees as costs has been governed by the Rules of Civil Procedure which were promulgated by this court pursuant to its constitutional rule making authority.[6]

37. *Id.* at 460–61.

38. *Id.* at 461 (emphasis added).

39. *Id.*

40. Alaska R. Civ. P. 93.

Civil Rule 54(d) provides, in part with respect to costs, that:

> Except when express provision therefor is made either in a statute of the state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.

Directly involved in this appeal is the question of the proper application and construction of Civ. R. 82(a) which establishes the allowance of attorney's fees to the prevailing party as costs.

---

6. Civil Rule 93 and AS 09.60.010 which provides:

> Except as otherwise provided by statute, the supreme court shall determine by rule or order what costs, if any, including attorney fees, shall be allowed the prevailing party in any case. [39]

Alaska Civil Rule 93, mentioned in *McDonough*, states the authority under which the civil rules were promulgated. It provides:

> These rules are promulgated pursuant to constitutional authority granting rule making power to the supreme court, and to the extent that they are inconsistent with any procedural provisions of any statute not enacted for the specific purpose of changing a rule, shall supersede such statute to the extent of such inconsistency. [40]

Both Rule 93 and Rule 82 were promulgated on October 9, 1959, as part of the original Rules of Civil Procedure.[41]

In *Ware,* decided in 1968, we also indicated that Rule 82 was promulgated under this court's constitutional rule-making authority.[42] We stated that "it has been held in states where rule making power is vested in the supreme court that the definition and taxation of court costs and attorney's fees are procedural...." [43] In support of this statement, and keyed to the word "procedural," we stated: *"See also,* Alaska Civ. R. 82, which allows and prescribes a formula for

41. Alaska Supreme Court Order No. 5 (October 9, 1959).

42. 439 P.2d at 794.

43. *Id.*

computing attorney's fees for the prevailing party...."[44] The quoted language and citation are reasonably read as a statement that Rule 82 is procedural and was promulgated under the power to make rules vested in this court by the constitution.

In two cases decided after *Crisp* and *Stepanov*, this court noted that the court rule governing attorney's fees on appeal was promulgated under the authority conferred by article IV, section 15. The cases are *State, Department of Highways v. Salzwedel*[45] and *State v. Smith.*[46] Although these cases did not involve Rule 82, they are significant because the statute that the State argues is the source of authority for this court to make rules concerning attorney's fees, AS 09.60.010, is not limited to attorney's fees in the trial court, but would also cover fees on appeal.

Based on this review of our case law, we believe that the State, at most, has shown that there are conflicting statements in our cases as to the authority for this court to promulgate rules concerning attorney's fees. The most recent cases indicate that the authority is constitutionally based, and this coincides with earlier cases in which the justices who promulgated the rules participated. We think their view is entitled to considerable weight because they were in a position to appreciate the basis on which they acted.

There are also other reasons supporting our conclusion that Rule 82 was promulgated under this court's article IV, section 15 powers rather than by delegation from AS 09.60.010. The first is that Rule 82 was promulgated more than two years before AS 09.60.010 was enacted. Of course, when Rule 82 was promulgated the territorial statutes concerning attorney's fees continued in effect under the Statehood Act until modified or superseded.[47] But the territorial statutes, unlike AS 09.60.010, did not refer to determining attorney's fees by rule or by an order of general application. When this court acted in 1959 to promulgate Rule 82, it was not clear that there ever would be a state statute such as AS 09.60.010.

Moreover, Rule 93 in itself indicates that the court believed that no statutory delegation was needed. As already indicated, this rule provides that all of the rules included in the original civil rules were "promulgated pursuant to constitutional authority granting rule making power to the supreme court."[48]

It is also important to note that the fact that in territorial and pre-territorial days the practice of awarding attorney's fees as costs was statutorily based says nothing about whether such statutes were procedural or substantive. Congress, and later the territorial legislature, had plenary authority over matters of both substance and procedure. It was not until the effective date of the Alaska Constitution granting rule-making authority to this court that it became important to examine the substance and procedure dichotomy for the purpose of determining the authority of the judicial and legislative branches of state government.

Finally, the 1959 court's apparent decision that rules granting attorney's fees as costs were matters of procedure and thus were within the constitutional authority of the court to promulgate was a reasonable one. There was, and is, a general consensus that

---

44. *Id.* at 794 n. 6.

45. 596 P.2d 17, 19 (Alaska 1979).

46. 593 P.2d 625, 630 (Alaska 1979). Despite its earlier placement in the Pacific Reporter, *Smith* was decided three weeks after *Stepanov*.

47. Alaska Statehood Act, Pub.L. No. 85–508, § 8(d), 72 Stat. 339, 344–45 (1958); *see In re Mackay*, 416 P.2d 823, 836–37 (Alaska 1964), *on rehearing*, 416 P.2d at 835 (Alaska 1965) (territorial statute concerning organized bar superseded by this court's exercise of its inherent authority).

48. Alaska R. Civ. P. 93. Over time, some of the civil rules have been amended by the legislature in accordance with article IV, section 15. One rule, Alaska Civil Rule 90.3, relating to child support payments, was adopted by this court in 1987 under this court's interpretative authority pursuant to article IV, section 1 of the Alaska Constitution. As the use-note to this rule states: "[I]t may be superseded by legislation even if the legislation does not meet the procedural requirements for changing rules promulgated under article IV, section 15." Apart from Rule 90.3 and the rules that have been legislatively amended, the statement expressed in Rule 93 that the civil rules are promulgated under this court's constitutional rule-making authority is, at least as a matter of intention, correct.

costs are procedural.[49] It follows that insofar as attorney's fees are an element of costs, they are also procedural. By 1959, the courts of the State of New Jersey, construing the 1947 New Jersey constitutional provision relating to rule-making authority—on which the Alaska Constitution was largely modeled [50]—had held that matters of costs and attorney's fees are procedural and appropriately committed to court rule.[51] Also reflecting the view that costs, including attorney's fees as costs, should be considered procedural is a lengthy and well-researched memorandum of the Alaska Legislative Council of July 1, 1960, titled "The Coordination of Legislative Bill Drafting and Statutory Revision with Judicial Rule–Making in Alaska." [52]

In summary on this point, Rule 82 is a rule of procedure because it more readily falls on the procedure side of the substance and procedure divide under the definitions established by the precedents of this court. Further, while statements in our case law as to the authority under which the court promulgated the attorney's fees rules are not necessarily consistent, we find that the statements attributing the rules to our constitutional rule-making authority are persuasive for the reasons we have just indicated.

### E. The Public Interest Exception Is Substantive Law.

Attorney's fees awarded under Rule 82, like costs generally, run in favor of the prevailing party regardless of whether the prevailing party is the plaintiff or the defendant. Commentators refer to this type of system as

---

**49.** *See, e.g., Carter v. General Motors Corp.,* 983 F.2d 40, 43–44 (5th Cir.1993) (concluding that Texas statute governing costs was procedural and federal rules displaced that statute to extent it might limit the district court's discretion to award costs); *Chaparral Res., Inc. v. Monsanto Co.,* 849 F.2d 1286, 1292 (10th Cir.1988) (stating that federal procedural law governs the taxation of costs); *In re Merrill Lynch Relocation Mgmt., Inc.,* 812 F.2d 1116, 1120 n. 2 (9th Cir.1987) (determining that Oregon statute placing liability for costs on the attorney is substantive, but noting that "[a]s a general proposition, the award of costs is governed by federal law under Rule 54(d)"); *Kivi v. Nationwide Mut. Ins. Co.,* 695 F.2d 1285, 1289 (11th Cir.1983) (concluding that the entitlement to expert witness fees as costs under the Florida Statutes is not a substantive right); *Brown v. Consol. Fisheries Co.,* 18 F.R.D. 433, 434–35 (D.Del.1955) (describing the "itemization of costs or the subsequent determination of what costs should be allowed" as a "ministerial task" lacking in substantive quality); *Behr v. Baker,* 257 Mich. 487, 241 N.W. 229, 230 (1932) (concluding that the definition and taxation of court costs are procedural).

**50.** 1 Proceedings of the Alaska Constitutional Convention 715–16 (December 12, 1955).

**51.** *State v. Otis Elevator Co.,* 12 N.J. 1, 95 A.2d 715, 717 (1953):

> From the outset in New Jersey, following English precedents, the allowance of costs and counsel fees had been uniformly considered by the courts of this State to be a matter of procedure rather than of substantive law. In accordance with this uniformly accepted view the Supreme Court, in the exercise of the rule-making power over practice and procedure

granted it by article VI, section II, paragraph 3 of the Constitution of 1947, promulgated Rule 3:54–7 relating to counsel fees....

(Citations omitted.) There is also contrary authority. *See Philco Corp. v. F & B Mfg. Co.,* 86 F.Supp. 81, 84 (N.D.Ill.1949).

**52.** The memorandum states in relevant part:

> Taxation of costs. There seems to be general agreement that how costs should be taxed is a matter of procedure. Although Joiner and Miller suggest that certain costs are matters of substance, it also seems most desirable as suggested by Levin and Amsterdam, to include the determination of the amount of costs as procedural also. This is a subject which is a part of the processing of the litigation and with which the court is very familiar. Moreover, the subject is one that does need continuous review and adjustment. It is also connected and complements the court's discretion in determining how costs should be taxed.
>
> Under the present rules of the court in Alaska, the taxation of costs is considered a matter of procedure. Provision is made in the rules for the prevailing party to be allowed costs, unless express provision is made otherwise by specific rule or by statute. In addition, the manner of preparing the cost bill, the items to be allowed, notice to the parties and review is provided. The allowance of attorney's fees as costs to the prevailing party is also covered. But a conflict has arisen since this general subject matter is presently also covered in the Alaska statutes. To avoid uncertainty, it is thought desirable in the present revision program to extract from the statutes all matters pertaining to the taxation of costs and that additional court rules to supplement the present rules regarding the taxation of costs be promulgated by the court where necessary.

"two-way" fee-shifting.[53] Rule 82, like other costs, is policy-neutral in the sense that prevailing parties are awarded partial fees regardless of the subject matter of their action or defense. The two-way and policy-neutral features of Rule 82 contribute in an important way to the rule's procedural character.

■ By contrast, there are numerous fee-shifting provisions intertwined with substantive statutes that call for attorney's fee awards in particular cases.[54] Such provisions are not policy-neutral. They are usually designed to encourage suits that, in the judgment of the legislature, will further public policy goals.[55] Further, they typically shift fees in only one direction—to the prevailing plaintiff.[56] Alaska has numerous fee-shifting provisions that are intertwined with statutes.[57] We have interpreted such provisions to call for the award of actual reasonable fees, in contrast to the partial reasonable standard employed in Rule 82 cases.[58]

(Footnotes omitted.)

**53.** *Alaska's English Rule, supra* note 22, at 14–15.

**54.** *See id.* at 14–15, 49.

**55.** *Id.* at 14.

**56.** *Id.*

**57.** *See, e.g.,* AS 09.38.095(a) (violations of exemption act); AS 09.60.070 (civil actions by victims of violent crimes); AS 23.10.110(c) (wage and hour claims); AS 23.20.470(a) (appeals by unemployment compensation claimants); AS 25.30.500(a) (actions arising under Uniform Child Custody Jurisdiction & Enforcement Act—a two-way fee-shifting provision); AS 34.03.300 (actions arising out of the Uniform Residential Landlord & Tenant Act—a two-way provision awarding fees to the prevailing party); AS 46.03.763 (state actions to impose penalties for discharge of oil).

**58.** *Bobich v. Stewart,* 843 P.2d 1232, 1238 n. 9 (Alaska 1992) (interpreting one-way fee-shifting provision of the Alaska Wage and Hour Act contained in AS 23.10.110(c) to require an award of full reasonable fees to the prevailing plaintiff and recognizing that the objective of such an award "is to encourage employees to press wage-and-hour claims"); *Rosson v. Boyd,* 727 P.2d 765, 767 (Alaska 1986) (purpose of one-way fee-shifting provision contained in AS 34.35.005(b) relating to mechanics' liens is to enable claimants "to recover judgments that would otherwise be too small to justify the expense of a lawsuit and an

Intertwined attorney's fee provisions are substantive in character.[59] In cases where they apply, such provisions govern the award of fees rather than Rule 82.[60] Rule 82 itself recognizes this, for it applies "[e]xcept as otherwise provided by law." [61] Rule 82 thus contemplates that fee-shifting provisions imposed by statutes should be followed, rather than the system encompassed by the procedural rule.[62]

■ The public interest litigant exception to Rule 82 resembles in its purpose and operation typical intertwined fee-shifting provisions. The exception is intended to encourage litigation that will further public policies. Operating affirmatively, it functions as a one-way fee-shifting system in favor of claimants, shifting full rather than partial fees. Operating protectively, the public interest exception shields losing public interest litigants from

appeal"); *see also Vazquez v. Campbell,* 146 P.3d 1 (Alaska 2006).

**59.** *See Grimes v. Kinney Shoe Corp.,* 938 P.2d 997, 1002 (Alaska 1997) (intertwined cost provision in state statute part of the substantive remedy).

**60.** *See* cases cited *supra* note 58. *See also Ferdinand v. City of Fairbanks,* 599 P.2d 122, 125 (Alaska 1979) (federal civil rights actions in state court are governed by 42 U.S.C. § 1988 rather than Civil Rule 82):

> The purpose of Rule 82 is to partially compensate a prevailing party for the expenses incurred in winning his case. It is not intended as a vehicle for accomplishing anything other than providing compensation where it is justified. In comparison, the explicit purpose of the fee shifting provision in the federal statute, 42 U.S.C. § 1988, is to encourage meritorious claims which might not otherwise be brought.

*Still v. Cunningham,* 94 P.3d 1104, 1116–17 (Alaska 2004) (provision of the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(d), rather than Rule 82 governed award of fees where a violation of the federal act was established as an affirmative defense); *Hayer v. Nat'l Bank of Alaska,* 619 P.2d 474, 476 (Alaska 1980) (award of fees under the Federal Truth and Lending Act, 15 U.S.C. § 1640(a)(3), should have been made in favor of debtors who established a violation of the act and were entitled to a partial set-off).

**61.** Alaska R. Civ. P. 82(a).

**62.** *See, e.g., Vazquez,* 146 P.3d at 2 n. 4 ("Civil Rule 82(a) itself provides that statutory attorney's

adverse awards of fees.[63] The protective aspect of the public interest exception also mirrors intertwined one-way fee-shifting provisions. We have interpreted several of the latter as barring attorney's fee awards against losing litigants whom the particular fee-shifting statute is designed to benefit.[64]

Like intertwined fee-shifting provisions, we believe that the public interest litigant exception is a doctrine of substantive law. It is, to use the *Nolan* language, "closely related to ... matters of public policy properly within the sphere of elected representatives." [65] As such, the exception is within the power of the court to develop in the process of the adjudication of cases. But, like other doctrines that are case law based, it is subject to legislative control.[66] The purpose of section 2 of HB 145 is "to expressly overrule" the decisions of this court establishing the public interest litigant exception.[67] We conclude that this purpose falls within the legislature's authority. HB 145 therefore is valid insofar as it abrogates the public interest litigant exception developed by the decisions of this court.

A potentially more difficult question is whether HB 145 could validly change provisions of Rule 82 either as written or as interpreted. Of particular concern to Judge Collins were subsections (b)(3)(I) and (b)(3)(K) of the rule.[68] She was concerned that subsection 2(b) of the act, codified as AS 09.60.010(b), would interfere with a normal interpretation of these subsections.[69]

On appeal the State takes the position that, although HB 145 changes the public interest litigant exception, it does not modify Rule 82. Thus, the State argues in reply to the Unions' brief: "The unions first argue that HB 145 conflicts with a rule and point to Civil Rule 82(b)(3)(I)-(K). The state concurs that HB 145 conflicts with a 'rule,' in the broad sense of the word, although that rule is the common law public interest litigant policy, not Civil Rule 82." The State makes the same point again in the paragraph that follows this statement: "HB 145 does not modify Rules 82 or 508, but rather a common law doctrine that limited where those rules would be applied." The State concludes by observ-

fees are to be awarded in preference to those prescribed under the rule....").

**63.** *Gilbert v. State,* 526 P.2d 1131 (Alaska 1974). The protective function of the public interest exception, like the affirmative function, is designed to encourage the pursuit of public interest litigation. As we stated in *Anchorage v. McCabe,* 568 P.2d 986, 990 (Alaska 1977): "The *Gilbert* public interest exception to Rule 82 is designed to encourage plaintiffs to bring issues of public interest to the courts."

**64.** *Grimes v. Kinney Shoe Corp.,* 938 P.2d 997, 1001 (Alaska 1997) (prevailing defendant in wage and hour action not entitled to an award of attorney's fees under former one-way wage and hour statute or under Civil Rule 82); *Whaley v. Alaska Workers' Compensation Bd.,* 648 P.2d 955, 960 (Alaska 1982) (award of attorney's fees against injured employee in workers' compensation appeal improper absent a showing that the appeal was frivolous, unreasonable, or brought in bad faith); *see DeNardo v. Municipality of Anchorage,* 775 P.2d 515, 518 (Alaska 1989) (no award of Rule 82 attorney's fees may be made against losing federal civil rights plaintiff under one-way fee-shifting provisions of 42 U.S.C. § 1988 unless suit is "frivolous, unreasonable or without foundation").

**65.** *Nolan v. Sea Airmotive, Inc.,* 627 P.2d 1035, 1042–43 (Alaska 1981).

**66.** As the State puts it: "This is not to say that the courts cannot create such claims [to full attorney's fees under the public interest litigant exception] as part of the common law process; it does mean, however, that their creation or abolition is a substantive matter, and the legislature may therefore act without a supermajority."

**67.** *See* HB 145 § 1(b), *supra* note 1.

**68.** These subsections provide:

(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:

....

(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;....

(K) other equitable factors deemed relevant.

**69.** Subsection 2(b) provides:

Except as otherwise provided by statute, a court in this state may not discriminate in the award of attorney fees and costs to or against a party in a civil action or appeal based on the nature of the policy or interest advocated by the party, the number of persons affected by the outcome of the case, whether a governmental entity could be expected to bring or

ing: "Finally, in making this argument the unions give no example of a single procedure that is modified by HB 145 and, indeed, there is none."

The State's position that the prohibition of HB 145 should be read so that it modifies the public interest litigant exception but does not change Rule 82 is supported by the prefatory language of HB 145. Subsections (a) and (b) of section 1 express the legislature's judgment that it is "[t]he judicially created doctrine respecting the award of attorney fees and costs for or against public interest litigants" that has created imbalance and inequality.[70] The solution for these ills expressed in section 2 is to "expressly overrule" the decisions that comprise this "judicially created doctrine."[71] The State's position is also supported by the rule of construction that statutes should be construed, if possible, to avoid the risk of unconstitutionality.[72] Because it amounts to a binding concession made by a party litigant and is reasonable in light of the foregoing considerations, we accept the State's position that HB 145 should be interpreted as not modifying Rule 82.

But we are of the view that the policy judgment implicit in HB 145 should influence the interpretation of Rule 82 in one respect. We have already concluded that basing an award of attorney's fees on the public policy nature of litigation is an application of substantive law. In light of this conclusion and the policy underlying HB 145, we believe that a limiting interpretation should be given Rule 82(b)(3)(K) relating to the use of "other equitable factors" to vary a fee award. Specifically, although we recognize that subsec-

tion (b)(3)(K) gives courts discretion to consider a broad range of equitable factors in awarding fees, we believe that courts must take care to avoid using this equitable power as an indirect means of accomplishing what HB 145 has now disallowed—using awards of attorney's fees to encourage litigation of claims that can be characterized as involving the public interest. Observing this limitation should result in a workable reconciliation of the substantive law objectives of HB 145 with the language and purpose of Rule 82.

### F. HB 145 Is Not Invalid on Its Face.

In *Nunapitchuk* Judge Collins held that HB 145 was facially invalid because "the bill's provisions precluding the courts from considering equitable factors in the award of attorney's fees impermissibly impede access to the courts in violation of the due process and equal protection clauses of the Alaska Constitution." We address this conclusion in the paragraphs that follow.

Statutes may be unconstitutional either facially or as applied.[73] A statute is said to be facially unconstitutional if "no set of circumstances exist under which the Act would be valid."[74]

Our cases have recognized that the due process clause of the Alaska Constitution guarantees the right of access to Alaska's courts.[75] The right, though not "fundamental," is recognized as "important."[76]

Although we have never held that the possibility that a litigant could be assessed attorney's fees under Rule 82 is a denial of the right to access, we acknowledged that this might occur if fees were too high in *Malvo v.*

participate in the case, the extent of the party's economic incentive to bring the case, or any combination of these factors.

**70.** HB 145 § 1(a), *supra* note 1.

**71.** *Id.* at § 1(b).

**72.** *State v. Blank*, 90 P.3d 156, 162 (Alaska 2004) ("This court will narrowly construe statutes in order to avoid constitutional infirmity where that can be done without doing violence to the legislature's intent.").

**73.** *Javed v. Dep't of Pub. Safety, Div. of Motor Vehicles*, 921 P.2d 620, 625 (Alaska 1996).

**74.** *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

**75.** *Varilek v. City of Houston*, 104 P.3d 849, 855 (Alaska 2004) (borough's imposition of $200 administrative filing fee not facially invalid, but invalid if hampers access to court for indigent unable to pay the fee); *Bush v. Reid*, 516 P.2d 1215, 1220 (Alaska 1973) (statute barring felons on parole from filing civil suits facially invalid).

**76.** Claimed infringements of the right of access that allegedly violate equal protection are thus "deserving of close scrutiny." *Patrick v. Lynden Transp., Inc.*, 765 P.2d 1375, 1379 (Alaska 1988).

*J.C. Penney Co.*[77] In *Bozarth v. Atlantic Richfield Oil Co.*, fees of $76,000—fifty percent of the prevailing party's total fees—were awarded against an employee after summary judgment was entered against him on his unsuccessful wrongful discharge claim.[78] Two dissenting justices were of the view that attorney's fees this high could interfere with the right to access the civil courts.[79] They stated that in determining a reasonable fee, "trial courts must consider whether the award is so great that it imposes an intolerable burden on a losing litigant which, in effect, denies the litigant's right of access to the courts."[80] Subsequently, Rule 82 was amended so that the norm in cases decided without trial is twenty percent of actual attorney's fees.[81] This change would obviously limit the potential access-impeding effect of court-awarded fees, as in *Bozarth*, by making fees smaller. Further, added to the rule were specific factors that courts should consider in order to determine whether a variation from the norm is warranted.[82] The factor expressed in subsection (b)(3)(I) is directly relevant to the issue of the right of access to the courts.[83]

As already indicated, the State has acknowledged that HB 145 does not modify Rule 82. The act therefore makes no change to subsection (b)(3)(I).[84] This subsection continues to apply to all cases, without discriminating between those brought for self-interested reasons and those intended to effectuate public policies. Trial courts remain free to reduce awards that would otherwise

be so onerous to the losing party as to deter similarly situated litigants—including litigants that would have previously been identified as public interest litigants—from accessing the courts. In determining whether an award would deter similarly situated litigants from accessing the courts, trial courts may continue to consider all relevant factors, including the nature of the claim advanced and the economic incentives for similarly situated litigants to bring similar claims. Thus, although HB 145 abrogates, in part, the public interest litigant exception, litigants advancing public interest claims may still, on a case-by-case basis, be shielded from awards of attorney's fees under Rule 82(b)(3)(I) for much the same reason that we accepted when we first adopted the exception in its original protective form: awarding fees in public interest cases may "deter citizens from litigating questions of general public concern."[85] As so construed, it is not possible to conclude that the act is facially invalid on denial of access to the courts grounds.

## IV. CONCLUSION

For the reasons stated:

(1) The judgment of the superior court in *Nunapitchuk* is REVERSED and the case is REMANDED to the superior court for further proceedings in accordance with this opinion;

(2) The award of attorney's fees in *Alaska AFL–CIO* is VACATED and the case RE-

---

**77.** 512 P.2d 575, 587–88 (Alaska 1973).

**78.** 833 P.2d 2, 3 (Alaska 1992).

**79.** *Id.* at 5–7 (3–2 decision) (Matthews, J., dissenting) (Compton, J., concurring in the dissent).

**80.** *Id.* at 6.

**81.** Alaska Supreme Court Order No. 1118 (January 7, 1993).

**82.** *See id.*

**83.** *See supra* note 68.

**84.** Concerning subsection (b)(3)(I) the State acknowledges that even the nature of the claim may be considered:

Rule 82(b)(3)(I) does not invite courts to discriminate between parties based on the type of claim they are advancing. Rather, it seeks to determine whether other parties in a similar situation (taking into account, presumably, the parties' wealth, the financial incentives built into the claim, and so on) could be deterred from using the courts by potential Rule 82 liability. Certainly, the nature of the claim advanced is a fact that will often go into the mix to determine what kinds of parties could be similarly situated. Read fairly, HB 145 does not prohibit consideration of the range of factual circumstances that go into a Rule 82(b)(3)(I) determination. All it does is prevent a court from making the nature of the claim a freestanding basis for discrimination in fee matters, except as provided by statute.

**85.** *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974).