B. Procedural Background
Plaintiff filed its Complaint [1] against Defendant on April 22, 2016 in the Southern District of Florida alleging infringement of the '262 and '860 Patents (the "Asserted Patents"). Defendant filed its Answer and Counterclaim on June 20, 2016 seeking a declaration of non-infringement of the Asserted Patents as well as a declaration of invalidity of the Asserted Patents.
Defendant filed a Motion to Transfer Venue [25] to this Court on July 22, 2016, which was granted on August 22, 2016 [29].
This Court held a Markman hearing on May 9, 2017 and issued its Order re Claim Construction of Disputed Terms [80] on May 18, 2017.
Defendant filed the Kushnick Motion on March 30, 2018 and its other two Motions on March 31, 2018. Plaintiff timely opposed, and Defendant timely replied.
II. DISCUSSION
A. Legal Standard
Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant. Anderson, 477 U.S. at 248, 106 S.Ct. 2505. The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the nonmovant. Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328-29 (9th Cir. 1983). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. Anderson, 477 U.S. at 255, 106 S.Ct. 2505.
*836 Where the nonmovant bears the burden of proof at trial, the movant need only prove that there is no evidence to support the nonmovant's case. In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010). If the movant satisfies this burden, the burden then shifts to the nonmovant to produce admissible evidence showing a triable issue of fact. Id.; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000) ; see also Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ).
B. Discussion
1. Non-Infrinaement of the '262 Patent
Courts employ a two-step analysis to determine whether an accused product literally infringes a patent's claims. Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1330 (Fed. Cir. 2001). First, the patent's claims must be "construed to determine their scope." Id."The second step requires a comparison of the properly construed claim to the accused device." Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1406 (Fed. Cir. 2004). "Literal infringement exists when every limitation recited in the claim is found in the accused device. Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d 1334, 1341 (Fed. Cir. 2016). "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir. 2002) (citation omitted). "Thus, the party opposing the motion for summary judgment of noninfringment [sic] must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant." Id. at 1372.
Defendant's '262 Motion boils down to two issues: (1) whether the keypad contained in the Cyclean system qualifies as the claimed "information detector" in the '262 Patent ; and (2) whether the Cyclean system contains a "control unit" capable of determining a wash program.
a. Information Detector
As noted, the '262 Patent claims a system for washing turbine engines that includes an "information detector" that is configured to "gather information related to engine type" in Claim 1 and "provid[e] information identifying at least one of washing unit and engine type" in Claim 14. '262 Patent 8:39-40, 10:17-18. In this Court's Claim Construction Order, the Court construed the above terms according to their plain and ordinary meaning. "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in guestion at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). Defendant, after applying the plain and ordinary meaning of the claimed "information detector," argues that there is "no credible evidence from which a reasonable jury could conclude that Cyclean's keypad can be the claimed information detector." Def.'s Mot. for Partial Summ. J. as to 262 Patent 9:19-20, ECF No. 126.
While Defendant dismisses the opinion of Plaintiff's expert, Steven Kushnick, as conclusory and inconsistent with the other evidence, Mr. Kushnick's opinion and deposition testimony, when considered with the other evidence, raise a genuine issue of material fact as to whether the Cyclean keypad can be considered an information detector. As Mr. Kushnick testified, [Redacted *837 ]. See Apgar '262 Decl., Ex. 3 ("Kushnick Dep.") at 47:1-4, ECF No. 126 5. Essentially, as Plaintiff argues, [Redacted]. According to Mr. Kushnick, the keypad would therefore "gather information related to engine type" and "provid[e] information identifying at least one of washing unit and engine type," as the claims of the '262 Patent require.
Defendant focuses on the [Redacted]. While Defendant did not specifically argue during claim construction that the information detector can only be an RFID reader or bar code reader, it essentially makes that argument now. Defendant relies on the specification's reference to an RFID reader and bar code reader, but the Court previously held that it would not "import a limitation into the claims from a preferred embodiment." Order re: Claim Construction 12:11-12, ECF No. 80. Accordingly, it will not do so now.
While the report of Defendant's expert, Dr. Gerald Micklow, is detailed in its explanation of how the Cyclean's keypad cannot qualify as an information detector, it does not override Mr. Kushnick's expert opinion. Instead, these differing opinions create a genuine issue of material fact as to whether the Cyclean's keypad can be considered an information detector. In re Gabapentin Patent Litig., 503 F.3d 1254, 1259 (Fed. Cir. 2007) (reversing summary judgment and finding that competing expert reports raised issue of fact regarding whether claim limitations were met).
b. Control Unit
Defendant argues that the Cyclean system does not infringe the '262 Patent because it does not contain a control unit that determines a washing program. Defendant's argument centers on the fact that, as Defendant and its expert understand, [redacted] not the Cyclean system itself. Mr. Kushnick, in analyzing the potential infringement of this claim, concludes that it is the Cyclean system that ultimately determines which preprogrammed wash to run. See Apgar '262 Decl., Ex. 9 ("Kushnick Report") ¶ 90, ECF No. 126-11. Mr. Kushnick's conclusion, in conjunction with the other evidence, creates a genuine issue of material fact.
As seen in the photograph on page forty-five of Mr. Kushnick's Report, [Redacted]. Id. at 45. [Redacted]. [Redacted]. As Defendant argues it, it would appear that [Redacted] thus creating a two-step process [Redacted]. Such a process may very likely support an argument that the Cyclean system does not accept information related to engine type and then independently determine the wash program based on that engine type as the '262 Patent claims. However, as Mr. Kushnick opines, the determination of the wash program is a one-step process: [Redacted] This is supported by Mr. Kushnick's deposition testimony:
Q. Okay. [Redacted]
A. [Redacted]
Kushnick Dep. 48:5-11. Therefore, according to Mr. Kushnick, the [Redacted]; that determination is made ahead of time with the preprogramming of the Cyclean system.
After construing all reasonable inferences in favor of Plaintiff, the nonmovant, as the Court must on summary judgment, see Anderson, 477 U.S. at 255, 106 S.Ct. 2505, a reasonable jury could find that [redacted] the Cyclean system is configured to accept information related to the engine type-[redacted] and determine a wash program to be used based on that engine type.[6] Because a reasonable jury could conclude as such, a genuine issue of *838 material fact exists as to whether the Cyclean system infringes the claims of the '262 Patent. Summary judgment is inappropriate on non-infringement, and the Court DENIES Defendant's '262 Motion.
2. Kushnick Motion
Defendant moves to exclude Mr. Kushnick's opinions relating to infringement of the '860 Patent based on three arguments: (1) Mr. Kushnick improperly assumes that U.S. Patent No. 8,216,392 (the "'392 Patent") describes the Cyclean system, (2) Mr. Kushnick improperly assumes that the Cyclean system uses a [redacted] nozzle, and (3) Mr. Kushnick's testing of the nozzles is not representative of the Cyclean system's operation. The Court will discuss each in turn.
a. Comparison to the '392 Patent
The '860 Patent provides parameters for four separate disclosures in its two claims, pressure, particle size, volumetric flow, and particle velocity. '860 Patent 4:7-18. In discussing each of these four parameters, Mr. Kushnick cites to, and relies on, the '392 Patent. Decl. of Gregory Apgar in Supp. of Def.'s Mot. to Exclude Steven Kushnick's Expert Opinions ("Apgar Decl. for Kushnick Mot."), Ex. A ("Kushnick Report") ¶¶ 52-53, 55, 59, 61, 64, 72, EOF No. 125-2. Despite Plaintiff's argument that the '392 Patent is just corroborating evidence, Mr. Kushnick cites most frequently to the '392 Patent, id., and includes a chart comparing the numbers included in the claims of the '860 Patent to the corresponding numbers in the '392 Patent, id. ¶ 61. Neither Mr. Kushnick nor Plaintiff has provided any evidence linking the '392 Patent to the Cyclean system. In fact, Brad Caban, Defendant's corporate representative, testified that he did not discuss with [redacted] the specifics of any patent. Decl. of Stephen K. Shahida in Supp. of Pl.'s Opp'n to Mot. to Exclude Steven Kushnick's Expert Opinion, Ex. 8 ("Caban Dep.") at 133:11-14, ECF No. 130-8. Instead, Mr. Kushnick simply assumes that the '392 Patent"teaches the operation of the Cyclean system." Kushnick Report ¶ 52.
In relying so heavily on the '392 Patent, Mr. Kushnick misses the focus of the infringement analysis he is trying to perforin. " [L]iteral infringement is determined by construing the claims [of the asserted patent] and comparing them to the accused device ...." Tate Access Floors v. Interface Architectural Res., 279 F.3d 1357,1366 (Fed. Cir. 2002) (citation omitted). Instead of comparing the claims of the '860 Patent to the Cyclean system, Mr. Kushnick compares the '860 Patent to the '392 Patent, which may not even teach the operation of the Cyclean system.[7] Even more troubling is that Mr. Kushnick is not comparing the claims of the '860 Patent to the claims of the 392 Patent. Rather, Mr. Kushnick relies on the specification of the '392 Patent and the most preferable embodiment of the '392 Patent.[8] The *839 claims of the '392 Patent do not even contain pressure ranges, particle sizes, flow rates, or particle velocities. See '392 Patent 7:7-8:42. Therefore, even if the '392 Patent did teach the operation of the Cyclean system, there is no evidence that it practices the ranges disclosed in the specification. Because Mr. Kushnick has provided no evidence for his reliance on the 392 Patent, such reliance is unreliable and misleading to the jury. Accordingly, Defendant's Motion to Exclude Mr. Kushnick's opinion based on the '392 Patent is GRANTED.
b. [redacted] Nozzles
Mr. Kushnick performed testing on three different nozzles included in the [redacted]. Such testing, in combination with other evidence, led Mr. Kushnick to the opinion that the Cyclean system infringes on the '860 Patent.
Defendant contends that the Court should exclude this opinion because Mr. Kushnick's assumption that the Cyclean system uses a [redacted] nozzle is based on inadmissible hearsay. At Mr. Caban's deposition, he testified that [redacted] Caban Dep. 134:1-17. Both Mr. Caban's statement at his deposition and [redacted] statement are hearsay. However, because Defendant designated Mr. Caban as its corporate witness, his statements fall under the party admission exception. Fed. R. Civ. P. 32(a)(3) ("[A]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's ... designee under Rule 30(b)(6).").
The admissibility analysis does not end there. Because Mr. Caban testified to a statement [redacted] made, there is another level of hearsay. See Cooley v. Lincoln Elec. Co., 693 F.Supp.2d 767, 791 (N.D. Ohio 2010) ("[A] 30(b)(6) designee cannot 'offer any testimony ... at trial ... to the extent that information was hearsay not falling within one of the authorized exceptions.' " (quoting Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 435 (5th Cir. 2006) ) ). This statement, however, does not fit within any exception to the hearsay rule.[9] Nonetheless, "experts are entitled to rely on hearsay in forming their opinions." Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 873 (9th Cir. 2001). "If [the underlying facts or data are] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703. [redacted] is "responsible for the entire program; so that's the marketing of the Cyclean, the equipment, any information, training information, things like that." Caban Dep. 51:2-5. Because [redacted] has such specialized knowledge of the Cyclean system, it was reasonable for Mr. Kushnick to rely on [redacted]'s statement that the Cyclean system uses a [redacted] nozzle. Therefore, the Court DENIES the Kushnick Motion as to Mr. Kushnick's assumption that the Cyclean system uses a [redacted] nozzle.
c. Mr. Kushnick's Testing of the [redacted] Nozzles
Finally, Defendant argues that Mr. Kushnick's testing of the [redacted] nozzles was unreliable and should be excluded.
*840 Defendant's argument comes in two parts. First, Defendant argues that Mr. Kushnick only tested three nozzles in the [redacted] series, but there are seventy-five different nozzles in the [redacted] series, and therefore, this limited sampling is unreliable. Second, Defendant argues that the Cyclean system's nozzles rotate during the wash program, which Mr. Kushnick failed to take into account, and therefore, his testing for particle velocity is not representative of the Cyclean system.
Defendant's arguments go to the weight of Mr. Kushnick's opinions, not the admissibility. In assessing an expert's opinion, the Court is not responsible for "excluding] opinions merely because they are impeachable." Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013). The Court does not decide "whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." Id. at 969-70. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
If Defendant wants to attack Mr. Kushnick's process of choosing the three nozzles he tested, it can do so on cross-examination. The same goes for whether Mr. Kushnick needed to take into account rotational forces when calculating particle velocity. Defendant has not provided any authority holding that Mr. Kushnick s sampling resulted in unreliable testing.[10] Further, Mr. Kushnick and Dr. Micklow disagree over the impact of the rotational forces. The Court is not the fact finder; it will be up to the jury to decide how much weight to give Mr. Kushnick's opinions. See Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court."). Accordingly, the Court DENIES Defendant's Motion to Exclude Mr. Kushnick's opinion of infringement based on his testing of the [redacted] nozzles.
3. '860 Motion
a. Non-Infringement of the '860 Patent
As noted, the '860 Patent provides parameters for four separate disclosures in its two claims: pressure, particle size, volumetric flow, and particle velocity. '860 Patent 4:7-18. Plaintiff must provide evidence that the Cyclean system infringes all four of these parameters. Plaintiff relies on the specification of the '392 Patent, the testing of the [redacted] nozzles, and the Lufthansa Engineering Orders. As noted in the Court's analysis of the Kushnick Motion, Mr. Kushnick may not rely on the '392 Patent.
Mr. Kushnick's testing of the [redacted] nozzles is used to show infringement of the particle size and velocity limitations set forth in the '860 Patent. In testing the [redacted] nozzles, Mr. Kushnick was able to measure particle size and plot it on a graph. Through his testing, Mr. Kushnick was able to determine, for example, that *841 one of the nozzles tested had 15% of its particles in the range of 120 to 250 microns, the particle size disclosed in the '860 Patent. Kushnick Report App. A ¶ 12. Mr. Kushnick then used the Bernoulli equation and calculated particle velocity, concluding that the use of a [redacted] nozzle would meet this claim element. Id. ¶ 67. Mr. Kushnick's opinions therefore create a genuine issue of material fact as to whether the Cyclean system practices the particle size and velocity limitations contained in the claims of the '860 Patent.
While Plaintiff has offered evidence sufficient to raise a genuine issue of material fact as to whether the Cyclean system practices the particle size and velocity limitations, it must also create a genuine issue of material fact as to whether the Cyclean system practices the pressure and flow rate limitations of the '860 Patent. Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1349 (Fed. Cir. 1998) ("An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied."). Plaintiff relies on the Lufthansa Engineering Orders to establish that the Cyclean system practices the pressure and flow rate limitations set forth in the '860 Patent. Defendant argues that Plaintiff has failed to show a connection between the Engineering Orders and the Cyclean system because Defendant [redacted]." Apgar '860 Decl., Ex. 4 (Caban Dep.) at 101:2-3. [redacted]" Id. at 69:18-22. Therefore, Defendant does not deny that [redacted]. Defendant argues that there is no evidence showing the number of washes performed pursuant to the Engineering Orders, but the number of washes is irrelevant to the specific question of whether the Cyclean system infringes the '860 Patent.
In his report, Mr. Kushnick plotted points on a graph corresponding to the [redacted. Apgar '860 Decl., Ex. 21 (Kushnick Report) ¶ 62. Specifically, Mr. Kushnick plotted points for [redacted][11] ; every single plot point fell within the parameters of the '860 Patent. Id. ¶¶ 61-62. Because Defendant [redacted], Mr. Kushnick was entitled to rely on such Orders in providing his opinion. At the very least, these Engineering Orders, [redacted], create a genuine issue of material fact as to infringement of the pressure and flow rate limitations of the '860 Patent.
Because Plaintiff has presented evidence that creates a genuine issue of material fact as to all four of the parameters disclosed in the '860 Patent, the Court DENIES Defendant's '860 Motion as to noninfringement of the '860 Patent,
b. Willfulness
Defendant argues that if any infringement exists, it was not willful; thus, Plaintiff cannot be entitled to enhanced damages.
The Patent Act provides for enhanced damages of "up to three times the amount found or assessed," 35 U.S.C. § 284, "in a case of willful or bad-faith infringement," Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 508, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). Typically, "[a]wards of enhanced damages ... are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior."
*842 Halo Elecs., Inc. v. Pulse Elecs., Inc., --- U.S. ----, 136 S.Ct. 1923, 1932, 195 L.Ed.2d 278 (2016). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." Id. at 1933.
"Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." WBIP, LLC. v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016). Plaintiff's primary evidence that Defendant knew of the '860 Patent prior to this Action is two letters Plaintiff sent to [redacted] See Apgar Decl., Ex. 7. These letters were addressed to [redacted]. Apgar '860 Decl., Ex. 9 ("Michael Scanlon Dep.") at 98:13-23. In these letters, dated September 18, 2013 and December 5, 2013, Plaintiff discusses patents, including the '860 Patent, that are available for licensing. Id., Ex. 7. However, Plaintiff has no evidence that anyone working for Defendant ever saw these letters prior to this Action [redacted] stopped working for Defendant in 2011, two years prior to Plaintiff sending the letters. Decl. of Gregory Apgar in Supp. of Def.'s Reply to '860 Mot., Ex. 35 ("Lee Dep.") at 133:9-12, ECF No. 165-14. While [redacted], signed for the delivery of the September 18, 2013 letter, see Apgar '860 Decl., Ex. 7, there is no evidence that [redacted] himself, or anyone actually working for Defendant at the time, ever actually saw the letter. Neither [redacted] nor were [redacted] deposed. None of Defendant's employees who were deposed testified to seeing the letters prior to this Action. See Lee Dep. 134:20-135:9; Michael Scanlon Dep. 98:11-12.
Plaintiff's remaining attempts to provide evidence of Defendant's knowledge of the '860 Patent prior to this Action are tenuous at best. Simply because the inventor of the '392 Patent included reference to the '860 Patent in the '392 Patent does not mean that Defendant, which had no role in inventing the '392 Patent or developing the Cyclean system, knew of the '860 Patent. Further, while Defendant admits to meeting with one of Plaintiff's parent companies regarding the purchase of EcoPower equipment, such a meeting does not suggest knowledge of the '860 Patent on which the EcoPower equipment is based. Plaintiff has provided no evidence that Defendant discussed the patents related to the EcoPower system when it expressed interest in purchasing EcoPower equipment. Because Plaintiff has not provided any evidence showing Defendant's knowledge of the '860 Patent prior to this Action, it has failed to establish a prerequisite of willfulness. The Court therefore GRANTS Defendant's '860 Motion as to pre-suit willfulness of infringement.[12]
c. Invalidity of the '860 Patent
Defendant also seeks to invalidate the '860 Patent based on indefiniteness. Claim language must "be precise enough to afford clear notice of what is claimed." Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 134 S.Ct. 2120, 2129, 189 L.Ed.2d 37 (2014). The definiteness standard "require[s] a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." Id. A party challenging the validity of a patent must *843 prove indefiniteness by clear and convincing evidence. Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP, 838 F.3d 1224, 1228 (Fed. Cir. 2016).
Defendant challenges the validity of the '860 Patent by arguing that the term "small quantities" is indefinite. In claim construction, Defendant made the same arguments regarding indefiniteness. The Court rejected Defendant's argument, stating, "[w]hile 'small quantities' could be defined in terms of volume only, Defendant has failed to prove by clear and convincing evidence, that the definition as used by Plaintiff rises to the level of indefiniteness." Order re: Claim Construction 10:1-5. The Court then noted that "a person of ordinary skill in the art could with reasonable certainty define 'small quantities' as a flow rate." Id. at 10:11-13. The '860 Patent includes a total volumetric liquid flow of 2 to 60 liters per minute, '860 Patent 4:17-18, thus defeating an argument of indefiniteness.
Defendant argues that the Court should reconsider its claim construction of "small quantities based on testimony of the inventor of the '860 Patent, Peter Asplund. In his deposition, which took place after the Court issued its Claim Construction Order, Mr. Asplund testified that "small quantities" refers to his goal of reducing the volume of liquid used in the wash. Apgar '860 Decl., Ex. 8 ("Asplund Dep.") at 140:16-22. Defendant's counsel then asked: "So the phrase 'small quantities of finely divided liquid' is not referring to the claimed total volumetric flow of .5 to 60 liters per minute. Is that right?" Id. at 140:23-25 (emphasis added). According to Defendant, Mr. Asplund then responded, "That's right." '860 Mot. 17:13-17 (citing Asplund Dep. at 140:10-141:4). However, in the pages of Mr. Asplund's deposition transcript Defendant provides, Mr. Asplund's answer is not included. Even if Defendant did provide evidence of Mr. Asplund's answer, Defendant has not provided testimony from Mr. Asplund affirmatively stating that "small quantities" is referring to a total volume of liquid used during the wash.
Importantly, "Markman requires us to give no deference to the testimony of the inventor about the meaning of the claims." Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1580 (Fed. Cir. 1996). However, inventor testimony "may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art." Howmedica Osteonics Corp. v. Wright Med. Tech., Inc., 540 F.3d 1337, 1347 n.5 (Fed. Cir. 2008). While Mr. Asplund could provide testimony as to what a person skilled in the art may understand small quantities" to mean, Defendant does not provide such testimony. Therefore, what little new testimony Defendant offers does not change the fact that Defendant has failed to prove indefiniteness by clear and convincing evidence. See id. at 1346-47 ("[Inventor] testimony is still limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application.").
Defendant notes that Plaintiff cites to cases where the courts dismissed inventor testimony based on the policy that inventor testimony is likely to be self-serving. However, the Federal Circuit has made clear that whether the testimony helps or hurts the inventor is irrelevant to the analysis. Id. at 1347 ("Wright's asserted approach, to rely on inventor testimony when it is contrary to interest, is unworkable. It would require a case by case determination as to whether an inventor is testifying against his or her interest."). Therefore, the fact that Mr. Asplund's testimony may be helpful to a finding of invalidity, and *844 thus contrary to his interests, does not make the testimony more probative.
Because Defendant has failed to prove indefiniteness by clear and convincing evidence, the Court DENIES Defendant's '860 Motion as to the invalidity of the '860 Patent.
III. CONCLUSION
Based on the foregoing, the Court DENIES Defendant's '262 Motion; GRANTS in part Defendant s Kushnick Motion as to Mr. Kushnick's reliance on the '392 Patent and DENIES in part as to Mr. Kushnick's reliance on and testing of the [redacted] nozzles, and GRANTS in part Defendant's '860 Motion as to pre-suit willfulness and DENIES in part as to non-infringement, post-service willfulness, and invalidity.
IT IS SO ORDERED.

The claimed invention must also be "configured to regulate the washing unit according to washing parameters." '262 Patent 8:45-47. However, Defendant is not disputing that the Cyclean system performs such function. '262 Reply 14:1-5.

Case law specifically prohibits infringement determinations on the basis of comparing the accused product to a patentee's commercial embodiment of the claimed invention. See Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1381 (Fed. Cir. 1998). This same logic should apply here, as the '392 Patent, whether it teaches the operation of the Cyclean system or not, is not the accused product or even a product at all. See Forest Labs., Inc. v. Abbott Labs., 239 F.3d 1305, 1313 (Fed. Cir. 2001) ("[Defendant] needed to present adequate evidence with respect to the accused product, not the content of a patent application that may or may not describe the product."). Further, preferred rates and velocities in a specification of a patent that may not teach the operation of the Cyclean system do not speak to the rates and velocities practiced in the actual Cyclean system.

For each number discussed in the specification of the '392 Patent, ranges are given, e.g., "[t]he pressure under which the cleaning medium is discharged at the nozzle opening preferably lies within the range of 20 to 100 bar, more preferably 30 to 80 bar, more preferably 50 to 70 bar." Apgar Decl. for Kushnick Mot., Ex. B ("'392 Patent") at 5:44-47, ECF No. 125-3. In his analysis, Mr. Kushnick goes directly to the last, and most narrow, range provided.

Plaintiff argues that [redacted]'s statements also falls into the party admission exception because is an agent of Defendant. However, Plaintiff has not provided any evidence of an agency relationship, and therefore, this argument holds no merit.

Defendant cites to In re Independent Service Organizations Antitrust Litigation, 85 F.Supp.2d 1130 (D. Kan. 2000) for the proposition that a court can exclude an expert opinion based on a questionable sampling technique. However, in that case, the court excluded an expert's opinion on another expert's sampling size. In re Indep. Serv. Orgs. Antitrust Litig., 114 F.Supp.2d at 1101 ("Dr. Garvin's opinion that five samples should be tested is nothing more than unsubstantiated personal opinion."). Therefore, the excluded opinion concerned the sample size; the opinion was not excluded because of the sample size.

Defendant argues that two of the ten Engineering Orders are for [redacted] planes, see Apgar '860 Decl., Exs. 32-33, and Defendant does not wash [redacted] planes, so those two Engineering Orders cannot be evidence of infringement. However, even if two of the Engineering Orders are not applicable to washes Defendant performs, Defendant has not provided evidence that the remaining eight Engineering Orders on which Plaintiff relies are inapplicable to washes Defendant performs. Therefore, a genuine issue of material fact remains.

Plaintiff argues that Defendant has continued to infringe on the '860 Patent during the course of this Action. Defendant has clearly had notice of the '860 Patent since service of this Action, and despite Defendant's argument to the contrary, "there is 'no rigid rule' that a patentee must seek a preliminary injunction in order to seek enhanced damages." Mentor Graphics Corp. v. EVE-USA, Inc., 851 F.3d 1275, 1296 (Fed. Cir. 2017) (citation omitted). Therefore, the Court only GRANTS the '860 Motion as to pre-suit willfulness. The Court DENIES the 860 Motion as to willfulness following service of the Complaint.